# JAMES L. KERNAN vs. CROOK, HORNER & COMPANY.

*Sales—When no Implied Warranty—Sale of Second-Hand Dynamo and Engine to be Connected With Purchaser's Boiler—Substantial Performance of Contract—Acceptance of Goods—Instructions to Jury—Evidence.*

Plaintiff agreed to erect in defendant's theatre a one hundred horse-power engine and a one thousand light dynamo, together with a switch-board, etc., the work to be completed within three weeks from date of order. Both parties knew that the engine and dynamo were second-hand articles, which plaintiff had purchased from a designated source. The engine was connected with a boiler previously used in defendant's theatre and the dynamo and other appliances connected with wires and 950 lights already in place. The plant was turned over to the defendant about the middle of March and he kept it in operation until the middle of May. During this period it generally proved inadequate to supply the 950 lights, and plaintiff made sundry repairs and changes in it. In May the defendant notified the plaintiff of his refusal to accept the plant and requested its removal. In an action to recover the contract price plaintiff's evidence was to effect that the engine and dynamo were good and capable of supplying a current for 1,000 lights but that defendant's boiler was too small to generate the requisite quantity of steam, and that some of the wires of the lighting system were too small. The testimony of defendant was that the engine and dynamo were inefficient and had been improperly coupled in their erection. *Held*, that under the contract there was no warranty that the articles supplied by the plaintiff would furnish a sufficient current for the 950 lights, since the boiler and the wires, other essential parts of the plant, were supplied

by the defendant, but the plaintiff was only bound to comply substantially with his contract to furnish an engine capable of one hundred horse-power and a dynamo capable of supplying a current sufficient for 1,000 electric lights, and if the jury found that that was done, then the plaintiff is entitled to recover the contract price.

*Held*, further, that the jury was properly instructed that the plaintiff is entitled to recover if they found that he substantially performed the contract, although there was some delay in its completion, the defendant not having insisted upon the time limit; that if the plant failed to supply a current for 1,000 lights because of the want of capacity, or improper installation, of the dynamo, the plaintiff is not entitled to recover anything, unless defendant accepted the plant, and in that event only what it was reasonably worth; that defendant's use of the plant for two months was not an acceptance if he made such use in reliance upon plaintiff's assurance that he would make it work properly, or take it out and make no charge.

*Held*, further, that there was legally sufficient evidence to go to the jury to show that the dynamo did or could supply current sufficient for 1,000 lights; that the wiring at defendant's theatre was inadequate to carry the requisite current, and that defendant had accepted the articles erected under the contract and had derived benefit from them. Consequently prayers asserting that there was no evidence of these facts were properly rejected.

*Held*, also, that a prayer was properly rejected which instructed the jury that if the failure to supply sufficient electric current was due to the inability of the boiler to generate enough steam then the plaintiff could not recover because there is no evidence that they informed the defendant of that fact.

When a purchaser accepts articles which are defective or not in compliance with the contract, he cannot afterwards reject them but he may offer evidence of the defects by way of recoupment and thus diminish the amount of the sellers' claim.

In an action to recover the price of a dynamo and engine, alleged by the buyer to be inefficient and improperly erected, when the defendant's experts testify as to the existence of various defects in the method of erection the plaintiff is entitled to offer expert evidence in rebuttal.

In such action an expert witness may be asked to state of his own knowledge what was the character of the dynamo and how many lights it was expected to furnish.

One of the defendant's experts had testified that the coupling of the engine and dynamo were too short. *Held*, that he could properly be asked on cross-examination whether the engine room was large enough to permit a longer coupling.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

*Plaintiff's 1st Prayer.*—If the jury find from the evidence in the case, that the plaintiffs agreed, as set forth in the letters offered in evidence dated respectively December 22nd, 1899, and December 27th, 1899, to furnish and erect a 100 horse-power automatic engine and a 1,000 light dynamo, and make suitable connections with the boiler of the defendant in the auditorium premises on North Howard street, and to connect the exhaust from the engine to the heating apparatus and make provisions to furnish live steam, when engine not in use and furnish necessary connections, including exciter for dynamo and converters required in building in complete running order and in a workmanlike manner for the sum of $3,000, and shall further find that the plaintiffs did so furnish the plant, referred to in said agreement, with the connections and appliances in said agreement called for and have complied with the terms of their agreement and have rectified the several errors and defects referred to in the evidence, then the plaintiffs are entitled to recover for the same the price fixed in the agreement aforesaid.   (*Granted.*)

The cause was argued before McSherry, C. J., Briscoe, Boyd, Schmucker and Jones, JJ.

*Charles H. Carter* and *Shirley Carter*, for the appellant.

As this suit is brought on a special count, *and* on the common counts.   *a.* In order to recover the contract price, the burden was on the appellees to show that they have *fully complied with* the requirements of the contract.   *b.* In order to recover on the common counts, if they have not fully complied with the contract, it was necessary for the appellees to show that the appellant *accepted* the plant as installed.   *Denmead* v. *Coburn,* 15 Md. 44; *Pres. Church* v. *Hoopes,* 66 Md. 603; *North Bros., &c.,* v. *Mallory,* 94 Md. 316–317.

The Court will consider in construing this contract, all the circumstances surrounding the making of the same, the knowledge of it which the parties possessed, the objects they sought to obtain, &c.   *B. & O. R. R.* v. *Rider,* 65 Md. 216, &c.

It will be found that *before* this offer was made and accepted by the parties hereto, the appellant had personally explained to the appellees, through Edward Crook, what the plant was *to be used* for and *what the capacity* of the said plant should be.

The appellant has always held that this was an agreement upon the part of the appellees that they would *furnish, erect* and *install* in the appellant's theatre, for the *purpose of lighting said theatre*, an electric light plant of a capacity to furnish one thousand standard lights.    The appellees construction of this contract is, as we understand it, and as they argued it in the Court below, that if they furnished and erected in a workmanlike manner, the particular pieces of machinery mentioned in the letter of December 22nd, with the necessary connections, then they are entitled to recover, under the special count, the contract price, irrespective of the fact as to whether the said plant, ever developed, as installed, the capacity to furnish one thousand standard lights in said theatre.

We contend that the construction put upon this contract by the appellant must be the correct one.    Having been informed of the purpose for which the plant was to be used, when they were consulted upon the subject by the appellant, they in their letter offered to supply machinery of a given capacity, which capacity was the capacity required for the purpose, towit, one thousand lights; and further, that they were to erect and install and put in "running order" in said theatre, this plant of the required capacity, and guaranted to do so in three weeks. Certainly, that must mean that when it is "in running order" it will answer the purpose for which it was to be used.    They were also to lay the foundation upon which the generating part of the plant has to be erected, towit, the engine, exciter and dynamo.

The details of installation required of course a *special knowledge*, possessed by persons such as the appellees, who were dealers in such machinery and were supposed to be skilled in the installation of such a plant.    They so held themselves out. The appellant having *no* knowledge, at the time of the installation of this plant, of any or all of these details, would have

been unable, even if he had had an opportunity of examining anyone or two pieces of machinery making up this plant, to know whether such pieces of machinery were suitable or unsuitable for such plants. . He could not tell the result of such installation until *after* the plant had been installed, and *after* it had had a fair and reasonable trial or test to find out whether it would develop the required capacity. After such reasonable test was the time, and the first time, he could intelligently determine the capacity of said plant. He was therefore absolutely dependent upon the knowledge and skill of the contractors. *Rice* v. *Forsythe*, 41 Md. 403; *Cent. Tr. Co.* v. *Arctic Machine Co.*, 77 Md. 238; *Crook, Horner & Co.* v. *B. & O.*, 80 Md. 346–347.

The first ground of objection to plaintiff's first prayer was that there was no legally sufficient evidence offered in the case that the dynamo furnished with the plant ever generated 1,000 standard lights, or had the capacity so to do.

. The second reason, given in the special exception to this prayer of the plaintiffs, is that it leaves the jury to construe the agreement. After setting out *some* of the things that the contract calls upon the appellees to perform, and instructing the jury that if they find that the appellees have performed them, it then goes on to say, "and shall further find that the plaintiffs did so furnish *the plant* referred to in the agreement, with the connections," etc., "*and have complied with the terms of the contract.*"

Did not this sentence leave the jury to construe the contract? The Court will note that the prayer does not set out all the things the contract called upon the plaintiff to do. For instance, it omits all reference to the obligation in regard to the foundation (and which, according to the evidence, was not sufficiently large). Nor does it bring out clearly the statement, in the letter, as to the agreement to put up this plant complete, and in running order. Therefore the statement of the contract is not complete. Nor is there anything in the prayer directing the jury that if they find that these various things have been done, then, having so found, the contract has been

fulfilled; but, on the contrary, they are directed that in *addition* to finding the things theretofore mentioned in the prayer, if they find that the *terms* have been complied with. In order to find that the terms have been complied with, it was necessary for the jury to determine the meaning of the terms. And in so determining, they did construe the contract.

The plaintiffs' prayer was also vicious because it omitted to refer at all to the evidence in the case, which, if believed by the jury, established the theory of the appellant that the appellees warranted this plant to furnish light to light in a reasonably efficient manner the lights on the "inside" of the appellant's theatre, and therefore, as drawn, it is in the teeth of the principle that when the proof for the defendant, if believed by the jury, would establish any proposition inconsistent with the theory of the plaintiffs' prayer, which is based upon his own evidence, such prayer cannot be given, because it *must assume or admit* of all the defendant's proof upon the subject. *McTavish* v. *Carroll*, 7 Md. 366; *Adams* v. *Capron*, 21 Md. 205–206.

The evidence shows that at the time the sale was about to be consummated, towit, at the time that the appellant had the opportunity to ascertain whether the plant as installed would fulfill the terms of the contract, and whether he would accept said plant, the appellees, when the appellant complained that the plant did not comply with the terms of the contract, by an affirmation of the capacity of the plant intended as an assurance that it would be made to give the required light, upon which assurance the appellant relied and acted, and allowed the plant to remain, and therefore the appellees expressly warranted that the plant would develop the capacity, furnish the light required in the theatre and be satisfactory to the appellant. *Crenshaw* v. *Slye*, 52 Md. 146.

There would be thus established a proposition absolutely inconsistent, of course with the plaintiffs' prayer. Because it is absolutely inconsistent with the appellant's third prayer which was granted by the Court, and the jury having two inconsistent instructions were misled and confused thereby.

The defendant's third prayer distinctly instructs them that they cannot find the contract price if they find that the plant did not furnish the 1,000 lights in a reasonably efficient manner, because of the incapacity of the plant so to do, and further that the burden is on the plaintiff to show that the plant had such capacity.    With both of these prayers before them, and *with no direction from the Court* that they were granted *in connection the one with the other*, nor *any explanation* of the two, it is very plain that the jury was easily misled and confused thereby.    *Haney* v. *Marshall,* 9 Md. 215; *Adam* v. *Capron,* 21 Md. 206; *B. & O. R. R.* v. *Blocher,* 27 Md. 285–286.

Where there is a warranty, it is not waived by the use of the machine.    *Crook* v. *B. & O. R. R.,* 80 Md. 346.    Therefore, the defendant's prayer No. 2 or No. 2½ should have been granted, as defendant's prayer No. 1¾ was refused.

*Wm. Pinkney Whyte* and *James W. Denny,* for the appellees.

After the plant was turned over to the defendant, it was run to the end of the season.    The mistakes in the size of the converters were corrected, with the assent of the defendant, who stood by and saw the plaintiffs expending their time and money in the purchase of necessary electrical appliances, until the plant was in complete running order and placed in the hands of the defendant, who thereafter paid the engineer and other employees, who continued to run the plant until the theatrical season closed.

This is an executed contract.    It is not one in which the doctrine of rescission could be invoked.    A contract may not be rescinded *in toto* by one where both cannot be placed in the same condition they were in before.    Application to rescind must be prompt to place the parties in *statu quo.*    While the defendant may recoup for any breach and be fully compensated, he cannot repudiate the contract.    A partial failure does not authorize a rescission.    The plaintiffs paid Roberts & Co. $1,150 for work and new electrical apparatus placed in connection with the dynamo and engine, and the whole was connected to the defendant's boiler.    Substitutes and neces-

sary appliances were furnished until the plant was in actual running order. The plaintiffs insist that the contract has been fully performed on their part in accordance with its terms.

The Court's instructions are most favorable to the defendant, and give him the benefit of the law on the subject.

There is no failure of consideration if the buyer gets what he contracts for, although not what he expected. *Penniman* v. *Winner,* 54 Md. 127. A partial failure does not authorize a rescission of a contract where there may be compensation, *Warfield* v. *Booth,* 33 Md. 63; *Foley* v. *Crow,* 37 Md. 62.

As to machinery, the true measure of damages is the cost of repairing the machinery or replacing it, so as to make it what it should be under the contract. *Central Trust Co.* v. *Arctic Machine,* 77 Md. 202 (238); *Brown* v. *Foster,* 51 Pa. St. 165; *Gallagher* v. *Sharpless,* 19 Alt. (Pa.) 491.

The plaintiffs agreed to furnish what they then had on hand, an engine and boiler, supply connections and properly attach them to defendant's boiler, and complete the job in workmanlike manner and in running order. There is no implied warranty, although stated to be for a particular purpose. He takes the risk in selecting a cheap plant, of its effecting the purpose he designed. *Rice* v. *Forsyth,* 41 Md. 389; *Warren Glass Works* v. *Keystone Coal Co.,* 65 Md. 547; *Kuntzer* v. *Hanson,* 44 N. W. 1065 (Neb.); *Rasin Co.* v. *Conly,* 58 Md. 60.

The plaintiff's four prayers were properly granted. The first limits recovery to the price fixed in the accepted proposition, and under the special count in the declaration. The second prayer refers to articles furnished the defendant in addition to those mentioned as the plant, *Walsh* v. *Janney,* 85 Md. 240.

When a defendant repudiates the contract, the plaintiff is not bound and may sue in *assumpsit, Fairfax* v. *Chambers,* 75 Md. 604; *Rodemer* v. *Hazelhurst,* 9 Gill, 288.

On the third prayer, *Rice* v. *Forsyth,* 41 Md. 389.

On the fourth prayer, *Ransher* v. *Cronk,* 3 N. Y. S. 470; *Leeds* v. *Little,* 42 Minn. 414; *Pinch* v. *Swedish Church,* 10 Atl. 264 (Conn.); *Dugan* v. *Andrews,* 36 Md. 587; *Anderson*

v. *Tood*, 77 N. W. 599; *M.* v. *Supervisors Queen Co.* 78 Hun. 267.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Court of Common Pleas of Baltimore City in favor of the appellees against the appellant.   The suit was brought in *assumpsit* on the common counts, and a special count to recover for furnishing and erecting, in the appellant's theatre, an engine and dynamo with a switch board and other appliances.   The articles thus supplied by the appellees, when connected with a boiler already on the appellant's premises and the system of wiring already installed there, were intended to produce an electric current sufficient for about 950 lights distributed around the interior of the building.

The contract declared on in the special count of the declaration originated in the sending on Dec. 22d, 1899, by the appellees to the appellant of the following letter:
"Mr. James L. Kernan,
         Proprietor Howard Auditorium,
                        City.
Dear Sir: We submit for your consideration the following proposal.   We propose to furnish and erect at your Auditorium on North Howard street one 100 horse power automatic engine and one 1000 light dynamo.   We propose to furnish and erect this engine and dynamo on foundation complete, the engine to be connected with steam pipes from boiler and the exhaust pipe up through the building with hood on same.   We also propose to connect exhaust from the engine to your heating apparatus, and also make provision for a direct connection of steam, so that the building can be heated by live steam when the engine is not in operation.

We propose also to furnish with this plant a switch-board and all the necessary connections including an excitor for the dynamo and all the belting.   We will also furnish if necessary any converter that is required in the building.

This estimate is intended to put this engine and dynamo up complete, and in running order, and we guarantee to do the same within three weeks from date of order.   We have the

engine and dynamo on hand.    We will complete the above in first class manner for the sum of $3,500.

Soliciting your order we beg to remain,

Yours truly,

Crook, Horner & Co."

The appellant declined to accept the proposal at the price of $3,500, whereupon the appellees reduced the proposed price to $3,000 and the appellant accepted the proposal.

There is evidence in the record tending to prove the following facts, towit: It was known to both parties to this contract that the engine and dynamo proposed to be supplied were not made by the appellees but were second-hand ones which had been purchased by them from sources which they made known.    The appellees furnished and erected the various articles and performed the work called for in the contract, in the theatre of the appellant, and also cleaned out the tubes of the boiler and made sundry repairs to it in order to put it in working order, and also supplied the material and performed the labor charged for in the account filed with the declaration in addition to those called for in the contract.    After the engine had been connected with the boiler and the dynamo and other appliances connected with the wires in place at the theatre, the lighting plant thus made up frequently if not currently proved inadequate to supply the 950 lights in position there and furnished an insufficient and unsteady illumination of the building.    The plant was kept in operation by the appellant from when it was turned over to him in about the middle of March until the close of his theatrical season in the middle of May.    During this period the appellees with his permission made sundry repairs to and changes of portions of the plant to improve its service, but the appellant was frequently compelled to procure from the Electric Light Company a portion of the electric current necessary to keep in operation the 950 lights which the plant was expected to provide for.

On May 10th the appellant wrote to the appellees this letter.

"Baltimore, Md., May 10, 1900.

"Messrs. Crook, Horner & Co.,
    North Howard street,
        Baltimore.

Gentlemen, I regret to inform you that it will be impossible for me to accept the electric light plant which you have installed in the Howard Auditorium, as it is entirely unsatisfactory.    My season will close on Saturday night of the present week, and I would suggest that you remove the machinery as soon thereafter as possible.

"If I should decide during the summer to install a larger plant with sufficient capacity to carry the lights of the entire house, I will be pleased to consult with you and give your firm the preference.

"Yours truly,

James L. Kernan."

The appellees insisted that they had complied with their contract and refused to take back the portion of the plant that had been furnished by them and demanded payment therefor, and subsequently brought the present suit and recovered the judgment from which the appeal was taken.

The evidence as to the true cause of the failure of the electric plant to do satisfactorily the work expected of it was quite conflicting.    The appellant offered much testimony of experts and others tending to prove that the failure was occasioned by the inefficiency of the engine and dynamo and also by the improper manner in which they had been coupled in their erection, which rendered it impossible to continuously maintain the high speed of the dynamo essential to the production of a sufficiently strong and steady current to supply the 950 lights required for illuminating the theatre.    The appellees on the other hand offered the testimony of one of their firm, and of the engineer who ran the engine and of two electrical engineers tending to prove that the several stipulations of the contract had been performed and that the engine and dynamo were in good condition and properly erected and were capable of furnishing and did at times furnish sufficient current for about 1,000 lights; but that the boiler with which the appellant attempted to operate them was too small to constantly generate the

quantity of steam requisite to drive them at the speed neces-
sary to furnish the desired current, and also that some of the
wires of the lighting system in use at the theatre were so
small that they caused a loss of the current in its transmission
over them.    The appellee Crook testified without contradic-
tion that all of the appliances, furnished under the contract by
his firm to the appellant, except the engine and dynamo were
new and that the appellees had paid $1,150 for those appli-
ances and their installation at the theatre.

The principles of law controlling the determination of this
case as it was presented in the lower Court are familiar and
can be stated without great difficulty.    The contract of the
appellees made in conformity to their written proposal of De-
cember 22nd, 1899, did not contain a warranty either express
or implied that the engine, dynamo and other articles supplied
by them would, when erected in the appellant's theatre, effi-
ciently light the 950 lights already installed in that building.
This is not the case of a manufacturer contracting to supply
an article which he manufactures to be applied to the partic-
ular purpose for which it is to be used by the purchaser, where
there arises by operation of law, as an incident of the sale, an
implied warranty that the article sold shall be reasonably fit
for the purpose to which it is to be applied.    The law appli-
cable to that class of cases is clearly stated and well supported
by authority in the recent case of *Queen City Glass Co.* v. *Clay
Pot Co.*, 97 Md. 440.

In the present case it was known to the purchaser that the
engine and dynamo, which were the most important articles
included in the sale, were not manufactured by the vendors
and were not even new, but were second-hand articles which
they had in their possession.    Still more important is the fact
that these articles did not of themselves when erected and put
in good running order constitute a complete electric light plant.
The essential elements of steam power to operate the engine
and wires to transmit the electric current when generated by
the dynamo, were to be supplied by the purchaser and for
those purposes he furnished an old boiler which had been used

for heating the building and a system of wiring which had also been in use before.    Out of that state of facts no implied warranty arose that, as a result of the performance by the appellees of their contract, the 950 lights of the theatre should be kept supplied with a sufficient illuminating current.

All that the appellees contract amounted to, beyond an undertaking to supply and erect complete and in running order the articles mentioned in their proposal and make the connections therein specified, was a representation that when they were so erected and connected the engine would be capable of furnishing 100 horse-power and the dynamo of supplying current sufficient for 1000 electric lights.    These representations being material ones the appellees were bound to an essential and substantial fulfillment of them, but not to a strictly and technically accurate one as would have been the case if they had been warranties.    The appellees, upon proof that they had performed their contract as above stated and had essentially and substantially complied with those representations, were entitled to recover the contract price.

The taking over by the appellant to his own control of the articles supplied and erected by the appellees under their contract, and operating them by his own employees for two months until the end of the season amounted to an acceptance of them, unless the jury believed his testimony that while he was so using the plant he repeatedly informed the appellees that it was not doing its work properly and was not satisfactory and that he continued using it only in reliance on the assurance of the appellees that they would make it supply the proper amount of light and that if they failed to do so they would take out the articles supplied by them and they should not cost the appellant anything.    If he once accepted these articles he could not afterwards reject them or rescind the contract.    *Cole* v. *Hines,* 81 Md. 476.    If they proved to be defective or unsound or did not reasonably and substantially answer to the representations made at the time of their sale to him and he suffered any loss or damage therefrom he was entitled to rely on those facts by way of defense or recoupment

and thereby diminish the amount of the recovery against him. *Abbott* v. *Gatch,*13 Md. 315; *Warfield* v. *Booth,* 33 Md. 72–3; *Graff* v. *Hensel,* 33 Md. 165; *Sentman* v. *Gamble,* 69 Md. 306; *Harmon* v. *Bannon,* 71 Md. 428.

If on the other hand the jury believed that the articles furnished and erected by the appellees under their contract were never accepted by the appellant and that the engine was not capable of developing 100 horse-power or the dynamo of generating current sufficient to reasonably supply 1,000 electric lights, after the said engine and dynamo had been completely erected and finished by the appellees, then the appellant having by his letter of May 10th, 1900, declined to accept the said articles and requested their removal by the appellees the latter were not entitled to recover anything for them.

It appears from the record that the appellees as plaintiffs offered five prayers and the appellant as defendant offered seventeen. The Court granted the plaintiffs first, second, third and fourth and the defendant's third, fourth, sixth and seventh prayers and rejected all of the others.

We will first notice the prayers which were granted. The plaintiffs first prayer correctly states the law upon the theory that they had fully complied with and performed their con-tract. Their second prayer requires the jury to allow the plaintiffs the reasonable worth of certain articles charged in the account filed with the declaration, exclusive of those called for in the contract, if they should find that they had been delivered to the defendant upon his order and accepted by him. Their third prayer instructs the jury that, if they find that the plaintiffs performed their contract as set forth in the first prayer, then the defendant had no right to require the removal of the plant because he thought that it would not accomplish the work that he desired. Their fourth prayer asserts that if the jury find that the plaintiffs substantially and in good faith executed their contract they were entitled to recover the contract price notwithstanding the fact that there was some delay in the completion of the installation of the electric plant. As there was no attempt made to insist upon the time limit of the contract this prayer was properly granted.

The defendant's third prayer instructed the jury that if, after the plaintiffs had finally and completely installed the electric light plant, it failed to supply current for 1,000 lights in a reasonably efficient manner because *of the want of capacity* or by reason of *improper installation of the dynamo*, the plaintiffs were not entitled to recover anything for the plant unless the defendant accepted the same, and in that event they could only recover what it was reasonably worth. His fourth prayer asserted that his use of the electric plant up until the middle of May did not amount to an acceptance of it if he was induced to continue to use it by the plaintiffs assurance that if he would do so they would make it work properly or take it out and charge him nothing for it. His sixth prayer asserted that if the plant failed to supply the 1,000 light current by reason of its faulty installation by the plaintiffs they were not entitled to recover the contract price; but if the defendant had accepted the plant they were entitled to recover what it was worth and no more. His seventh prayer asserts that there is no legally sufficient evidence in the case of the negligent operation of the light plant by the defendant's employees.

These granted prayers of the plaintiffs and defendant correctly and fully stated the law of the case, and gave to the latter the benefit of every proposition to which he was fairly entitled.

Of the defendant's rejected prayers Nos. 1 and 1½ assert that there was no evidence legally sufficient to show that the dynamo did or could supply current sufficient for 1,000 lights. Nos. 2 and 2½ assert that there was no such evidence of an acceptance by the defendant of the articles furnished and erected under the contract, and No. 3¾ asserts that there was no such evidence of the failure of the wiring at the theatre to convey a sufficient current for the lights. We have already said that in our opinion there was such evidence of all of those facts. Some of the evidence was not very strong, but it was legally sufficient. Its weight was a question for the jury. His prayers Nos. 8, 9, 10 and 11 assert propositions which are in effect covered by the proposition asserted in his sixth prayer

which was granted and has already been noticed by us.    His prayer No. 2¾ asserts that there is no legally sufficient evidence that defendant derived any benefit from the installation of the plant furnished by the plaintiffs.    In view of the fact that he used it to light his theatre in whole or in part for several months, the Court could not properly have granted that prayer.    His prayer No. 5 proceeds upon the theory that the plant installed by the plaintiffs under their contract must have been sufficient to supply current for 1,000 lights, without making any reference to the furnishing by the defendant of sufficient steam power to operate the plant which is not mentioned or noticed in the prayer.    Prayer No. 12 asserts that if the failure to supply sufficient electric current was due to the inability of the boiler to generate enough steam the plaintiffs could not recover, because there is no evidence that they informed the defendant of that fact.    It is apparent from what we have said of the true nature of the plaintiffs contract neither of these two prayers should have been granted.

What we have said of the prayers disposes of the defendant's special exceptions to the granting of the plaintiffs prayers one, two, three and four for want of legally sufficient evidence to sustain them.

The record discloses seven bills of exceptions taken to the Court's rulings on the admissibility of evidence.    The first of these was to the question put by the plaintiff's counsel to their expert witness Roberts, who had superintended the erection of the plant.    He was asked to state of his own knowledge what was the character of the dynamo, how many lights it was expected to furnish.    He replied in substance, that the factory rating of the dynamo was 1,200 lights; that so far as he knew no test of its full capacity had been made, but in the service at the theatre according to the test of the instruments on the switch board it gave approximately 1,000 lights.    The question required the witness to speak of his own knowledge, and his answer was pertinent to the issue and was competent evidence.    That objection was properly overruled.    The next two objections were to questions put by the plaintiffs counsel

on cross-examination to one of the defendant's experts who had testified that the coupling of the engine and dynamo was too short.   He was asked whether the engine room was large enough to have permitted a longer coupling and replied that it was not.   The objection was based upon the theory that the record showed that the engine room had been selected by the plaintiffs, and that there were other adjoining rooms that could have been added to. the engine room to make it larger if the plaintiff had demanded them.   Those were all facts to be considered by the jury in determining the responsibility for the short coupling if they found that to be defective construction, but the questions were within the range of legitimate cross-examination.

The remaining objections related to questions put by plaintiff's counsel in rebuttal to their expert witnesses in reference to their views and  experience as to what the defendant's experts had testified were in their opinion defective or injudicious features of the method of erecting the engine and dynamo adopted by the plaintiffs.   We do not find any reversible error in the admission of this evidence.   The defendant had the benefit of his expert testimony upon the same subject, and the plaintiffs were entitled to have the opinion of their experts upon it also go to the jury for what it was worth.

We are of opinion upon the whole record that the case was fairly put before the jury and we will affirm the judgment appealed from.

*Judgment affirmed with costs.*

(Decided January 12th, 1905.)