MORGAN MOTOR & FINANCE CO. v. OLIVER.

No. 6356.   Decided April 10, 1942.   (124 P. 2d 778.)

494

See 25 R. C. L., 863 (Perm. Supp. p. 5619); 59 C. J., Statutes, sec. 416.

*Louis H. Callister, E. R. Callister, Jr.,* and *Ned Warnock,* all of Salt Lake City, for appellant.

*David H. Oliver,* of Salt Lake City, for respondent.

McDONOUGH, Justice.

This action was originally commenced in the City Court of Salt Lake City by appellant seeking the possession of a

certain automobile sold to respondent under a conditional sales contract. Respondent cross-complained alleging the contract to be usurious and hence void by virtue of Section 44-0-2, R. S. U. 1933, as amended by Chapter 42, Laws of Utah 1935; that he was entitled to a return of all moneys paid under said contract under the provisions of Section 44-0-7, R. S. U. 1933.

From a finding on all the issues in favor of appellant, respondent appealed to the district court. Upon trial of the case there appellant was given judgment for return of the automobile and respondent was given judgment for return of all moneys paid under the conditional sales contract. Appellant appeals from that part of the decision of the trial court which determined the contract to be void; and respondent cross-appeals from that part of the trial court's decision awarding possession of the automobile to appellant.

Appellant, under its assignments of error assailing the judgment so far as adverse to it, summarizes its contentions thus: (1) Section 44-0-2, R. S. U. 1933, as amended by Chapter 42, Laws of Utah 1935, is unconstitutional in that the "said law contains more than one subject" and that "the subject matter of said law is not clearly expressed in its title"; (2) there is no provision under the laws of the State of Utah for the recovery of any sums paid under a contract for the purchase of any goods, wares, or merchandise; and (3) at all events the court erred in directing a verdict for respondent for the return of the money paid on the conditional sales contract. Respondent's contentions on his cross-appeal will be noted hereinafter.

The statute claimed to be unconstitutional (Sec. 44-0-2) read before it was amended:

"The parties to any contract may agree in writing for the payment of interest for the loan or forbearance of any money, goods or things in action, not to exceed, except as otherwise provided by law, twelve per cent per annum; provided, that on loans of money only, to the amount of $100 or less, it may be agreed in writing to take or receive as interest on such loan not to exceed $1 for the first month only of such loan, but thereafter no greater interest shall be contracted for,

taken or received than is allowed in this section. This proviso shall not be construed to allow or permit the splitting up of transactions for the loan of money into small amounts for the purpose of evading the provisions of this title."

In 1935 the legislature passed an act amending this section, the title to said act reading:

"And act amending Sections 44-0-1 and 44-0-2, Revised Statutes of Utah, 1933, relating to the legal and maximum rates allowed to be charged for a loan or forbearance of any money, or on a contract for the purchase of any goods, wares or merchandise; and providing that contracts for the purchase of goods, wares, and merchandise shall not carry any provision for interest on the said loan or contract exceeding 10 per cent per annum of the purchase price of said goods, wares or merchandise; and providing further that no additional charge for service fees or discount charges shall exceed four per cent per annum upon the purchase price of said goods, wares and merchandise or upon the principal of any loan."

As amended Section 44-0-2 reads:

"The parties to any contract may agree in writing for the payment of interest for the loan or forebearance of any money, goods or things in action, not to exceed, except as otherwise provided by law, ten per cent per annum; provided, that on loans of money only to the amount of $100 or less, it may be agreed in writing to take or receive as interest on such loan not to exceed $1 for the first month only of such loan, but thereafter no greater interest shall be contracted for, taken or received than is allowed in this section. This proviso shall not be construed to allow or permit the splitting up of transactions for the loan of money into small amounts for the purpose of evading the provisions of this title.

"No contract for the purchase of any goods, wares or merchandise or loan or forebearance of money, shall contain any provision providing for a handling or service charge on any said contract, or any commercial charge on said contract, or any charge whatsoever, which when taken together with the interest charged on said contract for the sale of goods, wares or merchandise, or for the loan or forebearance of money, exceeds ten per cent per annum of the unpaid principal sum of said loan or contract, except; (a) a contract may specifically provide for a service charge, which charge shall not exceed four per cent per annum of the unpaid balance of the said principal sum, such service charge to be applied but once on any transaction and shall not

be again applied in case of refunding or renewal of contract between the parties concerned with the original transaction nor shall such service charge be subject to any additional service charge, interest charge or penalty; (b) a reasonable attorney's fee in case of collection by an attorney; and (c) such exceptions as are otherwise provided by law.

"Interest accruing on loans, contracts, forebearance of money, goods, or things in action, under sections 44-0-1, and 44-0-2, Revised Statutes of Utah, 1933, when paid in advance or otherwise shall not exceed the rate of ten per cent per annum."

The 1935 act contains but one subject, to wit: rates which may legally be charged under varying circumstances for the "loan or forebearance of any money, or on a contract for the purchase of any goods, wares or merchandise"— whether by way of "interest" or other "charge." The fact that the legal rate—in addition to the maximum rate—is given in the title as being a part of the subject matter of the act certainly does not make the title duplicitous. The subject matter of both the original act and the amendatory act deals with "usury" and all matters contained in either act deal therewith.

However, it is urged that the title does not clearly express the subject matter of the act in that the title states that the act provides that no greater rate can be charged on a loan or contract than ten per cent *of the purchase price*—while the act itself provides that no greater rate can be charged than ten per cent *of the unpaid balance of the purchase price.* While it may appear at first blush that the title of the act and the subject matter therein contained are inconsistent, a closer examination will show them to be quite consistent and harmonious.

The criteria for determining whether the subject matter of an act is clearly expressed in the title thereof are in this jurisdiction clear and subject to no dispute. They are specifically set out in the case of *Elder* v. *Edwards,* 34 Utah 13, 95 P. 367, which case we have repeatedly affirmed on this point.

In the present case there is obviously no inconsistency between the title and the subject matter where the "purchase price" and "unpaid balance" are the same—when nothing is paid on the contract. It is only where there has been something paid down on the purchase price that an apparent inconsistency arises—the unpaid balance being less than the original purchase price. But does the language of the title indicate that interest may be charged on money *not owing*—that is to say, where part of the purchase price has been paid down, is the title susceptible of the interpretation that the subject matter of the act will permit interest to be charged on that part of the purchase price already paid? We think not. The title is clear in pointing out that the act relates to rates to be charged on money *owing*, or on a "forebearance," and there is no forebearance of that part of the purchase price which is paid at the time or before the contract is signed. Hence, the words "purchase price" in the title can have only one meaning and that is the *unpaid* "purchase price." Certainly the title to the act could not to be construed to mean that ten per cent interest could be charged on the *paid* "purchase price." And if not, it must logically follow that the title refers to the *unpaid* "purchase price." Nor is there any inconsistency between the "unpaid purchase price" and the "unpaid balance of the purchase price." They mean the same, to wit: That part of the purchase price which remains unpaid.

The title is sufficient to put anyone interested on notice as to the subject matter of the contemplated legislation, and is not misleading as to the object of the statute. We are of the opinion that the title and the subject matter meet the requirements of Article VI, Section 23, of our Constitution.

But even though Section 44-0-2, as amended, prohibits the execution of any contract providing for a greater rate of interest or handling charge than ten per cent of the unpaid balance of the "principal sum of said loan or contract," do the provisions of Section 44-0-7 permit a recovery of moneys

paid thereunder? This section which was not amended in 1935, reads:

"Every person, or in the event of his death his personal representatives, who shall pay or deliver any greater sum or value than is allowed by this title to be received for or on any loan or forebearance, or who shall pay the principal or any part thereof of a usurious loan or forebearance, may recover from the person who shall have taken or received the same the amount of money so paid or value delivered, both of principal and interest, provided action is brought within one year after such payment or delivery."

It is appellant's contention that since this section was not amended in 1935 when Section 44-0-2 was amended to include a "contract for the purchase of any goods, wares or merchandise," there is no provision for recovery of moneys paid under such a contract as is prohibited ■ by the amendment of 1935. A careful reading of Section 44-0-7, however, will reveal that even though it was not amended, nevertheless the provisions thereof are sufficiently broad to include a usurious conditional sales contract, as well as other usurious contracts. Whatever the nature of the contract, it is the charge for "loan or forebearance" of money due thereunder in excess of the maximum rate specified that it is prohibited and which makes the contract usurious. And Section 44-0-7 specifically states that a person

"who shall pay or deliver any greater *sum or value than is allowed by this title to be received* for or on any loan or forebearance, or who shall pay the principal or any part thereof of a usurious loan or forebearance * * *" (italics added)

may recover the same. The italicize portion just quoted makes no distinction as to the nature of the contract, but provides only that the charge be one that is prohibited by the title. And therefore an amendment to include contracts which may not have theretofore been included within the title would put them in the same category as other contracts with respect to the right of an individual to recover moneys paid under a contract prohibited by the statute.

Finally, did the lower court err in directing a verdict for respondent on the issue of whether the contract here involved was usurious? We think not. There appears to have been no conflict in the actual facts surrounding the making of this contract. The dispute arises as to what conclusion should be drawn from those facts as to the ■ nature of the contract. Respondent negotiated with a salesman for appellant company for the purchase of an automobile, and a tentative agreement was entered into between the salesman and respondent termed a "Retail Used Car Buyer's Order," for the purchase of the automobile— the "selling price" of which was set out as $695, plus $13.90 sales tax and $6 for license and certificate of title, making a total of $714.90. Payment was to be made by paying $464.90 down (by way of trading in an old automobile) and the balance of $250 "payable in 15 payments of $22.07, including insurance and charges." The order further provided:

"The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever will be recognized."

This order was signed by respondent as purchaser, the name of the man who obtained the order appears thereon, and it was "approved and accepted" by Mr. Morgan, president of appellant company. When the sum of $250 and the cost of insurance which was $36 are deducted from the total 15 payments of $22.07 each, there remains the sum of $45.05, which was to be collected as "charges" for the "forebearance" of the full amount which would otherwise have been due immediately. This, under our statute, is prohibited since it constitutes more than "ten per cent per annum of the unpaid principal sum of said loan or contract."

Appellant contends, however, that the purchase price of the automobile was not $695 (as indicated on the preliminary agreement) but was the amount specified on the final conditional sales contract, which provided that the seller agreed to sell and the buyer agreed to buy a certain auto-

mobile for the following payments: "$464.90 * * * upon the signing of this contract, receipt of which is hereby acknowledged, and the further payments indicated," said payments being $22.07 on May 26, 1938 * * * and $22.07 on the 26th day of each month, after the date of the last payment above specified, for fourteen months more, together with such other sums as are hereinafter provided for."

Appellant argues that the parties to a time purchase contract may agree to whatever time purchase price they may desire without reference to the price at which the owner might be willing to sell the same property for cash, and though the time purchase price may be in excess of such cash price, plus the maximum allowable rate of interest, Section 44-0-2, R. S. U. 1933, as amended, would not be infringed. It insists that the price quoted of $695 was the cash selling price; that the final agreement which provided for a total payment of $795 was the time selling price; and that the conditional sales contract entered into by the respective parties provided for a total payment for the automobile of $795, to which was added nothing by way of "interest" or "charges" that would bring the contract within the purview of Section 44-0-2, as amended. In support of this contention numerous cases are cited to the effect that parties to a conditional sales contract may agree to a much higher price for the sale of an article on time than would be charged if paid for immediately, and that such excess does not constitute interest on a "loan or forebearance of money." Several cases go even further and hold that in order to come within the usury statute the transaction must be one for the loan of money only; that if the transaction is one involving the sale of goods it does not come within the purview of the usury statute unless such device is used to circumvent the statute. But in this state we have a statute which is radically different from those there discussed. It specifically provides that contracts such as the one here involved are unlawful. Of course, it does not prohibit the

making of conditional sales contracts. Nor under its provisions is it impossible for a merchant to sell goods on time at a higher price than he might take if sold for cash. But what it does prohibit is the transaction, such as here involved, in which the seller quotes a price to the prospective customer—without regard to cash or time—and then when the transaction is finally completed as a time purchase one charges him more than the law permits for the "forebearance" of the money due for the goods sold. See on this subject *Saylor* v. *Brady*, 63 N. D. 471, 248 N. W. 673, where the statute involved is somewhat similar to our own.

It, therefore, follows that the decision of the trial court on the cross-complaint of respondent should be affirmed.

In considering respondent's cross-appeal, we are confronted with two issues: (1) Whether the action brought by appellant is maintainable, and (2) whether appellant is entitled to a return of the automobile in question.

Respondent contends first of all that at the time this action in claim and delivery was brought by appellant, the latter was already in possession of the automobile, and therefore such an action would not properly lie. However, the sheriff's return shows that the automobile was taken from respondent, and the entire proceeding indicate that the action is based on the theory that defendant had possession. The only evidence to the contrary is the testimony of defendant himself who testified that an attempt was made to take the automobile away from him by certain officers of plaintiff company some hours before the sheriff served his writ. However, even this testimony discloses that defendant had not given up possession to appellant company but at the time of the arrival of the sheriff he was still disputing the possession of the automobile with appellant. Under these circumstances we cannot say that appellant company was in possession of the automobile at the time this action was brought.

Respondent's next point is that appellant company is not entitled to a return of the automobile; that under the pro-

visions of Section 44-0-9, R. S. U. 1933, respondent is entitled to the automobile as well as a return of all moneys paid on the contract declared to be usurious. With this we cannot agree. The section relied on reads:

"Whenever it shall satisfactorily appear that any bond, bill, note, assurance, pledge, conveyance, mortgage, deed of trust, contract, security or other evidence of debt has been taken or received in violation of the provisions of this title, the court shall declare the same to be void, and enjoin any prosecution thereon, and shall order the same to be surrendered and canceled, and any property, real or personal, embraced within the terms of such contracts, and all securities, to be delivered up, if in possession of the defendant in the action; or, if the same are in the possession of the plaintiff, provision shall be made in the judgment or decree in the action removing the cloud of such usurious contracts or securities from the title to such property."

Under the provisions of this section it is property which, except for the usurious contract, would be the property of the borrower (or buyer)—not the property of the seller or one making the loan—that must be delivered up. The statute, in effect, states that it will place the parties as they were before the contract—in so far as property given as security for the repayment of the "loan of forebearance" is concerned. In the present instance, the property involved never belonged to respondent. It was in the beginning and always remained the property of appellant company. When the contract under which it was conditionally sold to respondent failed, the title still remained in the appellant company, and therefore it was entitled to its return. What effect a completed transfer of title, with a mortgage back, would have we need not here decide. We hold merely that under the provisions of the contract here involved the title to the property continued in the seller, and the buyer having never had title to the property is not now entitled to have title *restored* to him under the provisions of Section 44-0-9, R. S. U. 1933, above quoted.

The judgment of the trial court is affirmed. Respondents having prevailed on the appeal and appellant having pre-

vailed on the cross-appeal, it is ordered that the parties bear their own costs.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.