ADOLPH SEEBOLD v. A. N. EUSTERMANN AND OTHERS.[1]

March 10, 1944.

No. 33,508.

[1]Reported in 13 N. W. (2d) 739.

568

L. L. Duxbury, for appellant.
Sawyer & Sawyer, for respondents.

JULIUS J. OLSON, JUSTICE.

On May 17, 1941, plaintiff entered into a conditional sales contract with defendant copartners for the purchase of a Ford truck with certain accessories. Possession of the vehicle was duly given to him. (The corporate defendant was eliminated from the case

by the trial court, and, since no complaint is being made here, we shall hereinafter refer to the copartners as the only defendants.)

In August this suit was brought; its purpose, to have the sales contract "cancelled and vacated," because under its terms defendants "exacted as interest" on the unpaid portion of the purchase price an amount "in excess of the highest lawful rate" under our law. He wanted an adjudication of ownership in himself and that defendants be declared to "have no right, title, estate, interest or lien in the said motor vehicle." Both the vendee and the vendors executed the contract, a copy of which was attached to the complaint as an exhibit. Defendants' answer admitted the execution of the contract but averred that the sale price was as therein stated; "that there was no lending of money involved in their dealings with this plaintiff," since said dealings in fact constituted "merely a sale of personal property and not a loan of money."

Later, after defendants had repossessed the truck, plaintiff by supplemental complaint demanded repossession, claiming that their act in repossessing it was willful and unlawful. He demanded possession, or, if that could not be had, that he be allowed $1,200, its claimed value, and $300 for the loss of its use during the detention.

The court's findings and conclusions are substantially as follows: Plaintiff agreed to pay for the vehicle $1,423.35, less "fleet owner's discount of $153.90, making a net selling price of $1,269.45." In addition, he also agreed to pay part of the "purchase price in cash, and the remainder in 24 monthly installments, and further agreed to pay an insurance premium of $180.18 to cover said property during said 24-month period." Plaintiff gave defendants two checks amounting to $203.63 at the time the deal was consummated, leaving an unpaid balance of $1,246 payable in 24 monthly payments of $57.84 each. In arriving at the contract figure of $1,388.16, there was added to the unpaid balance $142.16 "as interest upon said deferred payments, and for no other purpose"; that the highest lawful interest rate (eight percent) upon the $1,246 so payable amounted to only $103.60; that because thereof the contract was usurious; that subsequent to the commencement of the action defendants

"took said property from the possession of the plaintiff and have ever since wrongfully detained the same"; that the market value of the property so taken was $900; and that plaintiff "has been damaged by said wrongful detention" to the extent of $47.25. As conclusions of law, the court directed entry of judgment declaring the sales contract to be null and void; that plaintiff was entitled to recover possession of the property sold, or "the sum of $900, in case a recovery of possession cannot be had," plus $47.25 as damages for the wrongful detention. In its memorandum the court said that "the evidence shows very clearly that the contract price was not merely a purchase price, but included $142.16 to cover interest for 24 months"; that defendants neither pleaded nor proved any title to the truck "except their right to repossess the same under the usurious contract"; that therefore plaintiff's possession "made a prima facie case, and compels a judgment in his favor."

On defendants' motion for amended findings and conclusions of law or a new trial, the court further found that the down payment of $203.63 was represented by plaintiff's two personal checks, one for $153.63, the other $50; that plaintiff failed to provide funds to meet the $50 check, so that as to it the defendants "have received nothing"; that the check for $153.63 given by plaintiff and actually paid "was a payment on principal and included no payment on interest"; that plaintiff's original and amended complaints were served prior to the time of defendants' repossession on September 9, 1941; that they took the property that day and "have ever since detained the same." (The original finding stated that the taking and detention were "wrongful.") The court concluded that the conditional sales contract was "null and void" but that, nevertheless, defendants "are the owners and entitled to retain the possession" of the property sold under the original contract. Consequently, it eliminated the item of $47.25 originally allowed as damages for the detention. Plaintiff then moved for amended findings. That motion was denied and judgment entered in conformity with the findings as finally amended, from which plaintiff appeals.

The question presented is whether plaintiff as the vendee in this contract, which provides "that title to said property shall not pass to the Purchaser until all sums due under this contract are fully paid in cash," may maintain an action in replevin to recover the property so sold, or its value if possession cannot be had, because, and only because, the contract is void for usury, the vendor having repossessed the same because of plaintiff's failure to make the stipulated payments provided thereby.

Plaintiff's theory is that the title retained by the vendors was for security only, and that therefore, since the contract debt created and secured thereby is void and unenforceable, the vendors had no right or title as against him sufficient to defeat his right to retain such possession. Obviously, his claim rests upon a strict interpretation and application of our usury law. His reliance is placed upon Minn. St. 1941, §§ 334.01, 334.03, 334.05 (Mason St. 1927, §§ 7036, 7038, 7040), which, so far as here material, provide:

"334.01·[7036]. * * * no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8.00 on $100.00 for one year."

"334.03 [7038]. All * * * contracts and securities, * * * whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action than hereinbefore prescribed, shall be void except * * *." (The exception referred to has no bearing on any issue here presented.)

"334.05 [7040]. When it satisfactorily appears to a court that any * * * contract, security, or evidence of debt has been taken or received in violation of the provisions of this chapter it shall declare the same to be void, enjoin any proceeding thereon, and order it to be canceled and given up."

Defendants say that if the contract is wholly void, no title or right could attach under it; that the whole deal is a mere shadow,

having nothing in the way of substance to support it; that, since they concededly were the owners when the deal originated, such ownership never left them; that if no rights were or could be created under the contract, plaintiff's mere possession of the chattel when the action was brought could not divest them of their title and consequent right of possession. Defendants further assert that the legislative purpose under our usury law is cogently and accurately stated in *Id* § 334.02 (§ 7037), which provides:

"Every person who for any such loan or forbearance shall have paid or delivered any greater sum or value than in § 334.01 allowed to be received may, * * * recover in an action against the person who shall have received the same, * * * the full amount of interest or premium so paid, with costs, if action therefor be brought within two years after such payment or delivery."

Their point is that, since recovery can be had for only what is in excess of the permissible interest rate by one who has parted with the entire price for an article purchased or who has repaid in full the loan made, the legislature cannot be said to have intended such grave and confiscatory results as would obviously obtain if plaintiff's position were to be sustained. They point to the fact that plaintiff has paid only a total of $211.47 on this deal, representing the initial payment of $153.63 plus $57.84 paid July 21 as the first monthly payment under the terms of the contract. In addition, they say, and the record sustains their claim, that plaintiff ran the vehicle 25,000 miles for commercial purposes during the time he was in possession of it and has received in actual value by reason of such use much more than the money he has actually parted with; that taking this property from them in the face of the undoubted facts here shown results in such an obvious injustice as to shock the mind of every reasonable person.

Plaintiff does not question the potency of defendants' contentions, but asserts that equitable principles are not to be applied, since his rights are purely statutory, and that the law must take its course. He stands squarely upon the letter of the law as he interprets it.

From our statute and decision law we gather certain principles that should be of aid in solving the obviously difficult problem here presented.

■ Usury has been defined as "the reserving, securing, or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action, than is allowed by law." 6 Dunnell, Dig. & Supp. § 9961, and cases in note 17; Acheson v. Chase, 28 Minn. 211, 213, 9 N. W. 734, 735.

■ There are three essential elements entering into and furnishing the tests of whether there is usury in a given case, viz.: there must be (1) a loan or forbearance of money, Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 553, 289 N. W. 411, 413; (2) an agreement for a return of the money at all events; and (3) an agreement to pay more than the legal rate of interest for its use, 6 Dunnell, Dig. & Supp. § 9961; Missouri, Kansas & Texas Trust Co. v. McLachlan, 59 Minn. 468, 475, 61 N. W. 560, 562. There can be no usury unless there is in fact a loan with an agreement to repay an amount greater than the legal rate. State Bank v. N. W. Security Co. 159 Minn. 508, 199 N. W. 240; 66 C. J., Usury [§ 110]b, and cases in note 4. In Smith v. Parsons, 55 Minn. 520, 526, 57 N. W. 311, we held that the test is, "will the contract, if performed, result in producing to the lender a rate of interest greater than is allowed by law, and was that result intended?"

■ Whether a particular transaction is usurious is ordinarily one of fact, not to be determined by (Dunn v. Midland Loan Finance Corp. 206 Minn. 553, 289 N. W. 413) "any hard and fast test," nor "by what the parties represent the transaction to be, but by considering the whole evidence to ascertain whether or not it is in substance a contracting to receive usurious interest for a loan or forbearance of money. The process involves looking through the form to the substance. No device or shift may be employed to conceal the true character of the transaction." State Bank v. N. W. Security Co. supra; 6 Dunnell, Dig. & Supp. § 9965, and cases cited in notes.

■ As decided in the Dunn case, 206 Minn. 554-555, 289 N. W. 413-414:

"* * * A sale of personal property is not a loan or forbearance of money and is not within the usury law unless the sale is a mere form or device to evade the usury law. * * * The increase of the credit price for the purposes of the conditional sales contract does not convert what otherwise would be a sale into a loan. The owner has the right to determine the price at which he will sell his property. He may fix one price for cash and another price for credit. The fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan [citing cases]. * * *

\* \* \* \* \*

"The power to determine the extent of the increase of the credit over the cash selling price is incident to the owner's right to fix the latter and is a matter of contract between the parties. Courts have observed that in calculating the addition to the cash price the owner may consider all factors which influence vendors, such as profit, return on investment, overhead, handling charges, risks involved, insurance, sale discount of contract for deferred payments, and perhaps other items [citing cases]."

■ While "usury laws are enacted to protect the weak and necessitous from oppression" (6 Dunnell, Dig. & Supp. § 9962), they should not be converted from shields of protection into swords of offense, Blindman v. Industrial L. & T. Corp. 197 Minn. 93, 98, 100, 266 N. W. 455, 457, 458, 267 N. W. 143, 104 A. L. R. 1253; and, since they are penal in nature, they should be construed with reasonable strictness.

■ As we have seen, the statute, with certain exceptions not here material, declares usurious contracts void. Such contracts, while executory, are nonenforceable, and any amount taken or received as interest above the legal rate is fatal. 6 Dunnell, Dig. & Supp. § 9963, and cases cited in notes 27 and 28.

■ It is the general rule, "everywhere conceded, that when the sale is in fact *at an agreed cash price,* and the form of a sale on credit is resorted to for the purpose of evading the statute against usury, the transaction will be declared usurious." (Italics supplied.) 27 R. C. L., Usury, § 15, and cases in note 15; 66 C. J., Usury [§ 76] (b), and cases cited in notes 47 to 50. We cited with approval these authorities in the Dunn case, 206 Minn. 555, 289 N. W. 414. *Cf.* Universal Credit Co. Inc. v. Lowell, 166 Misc. 15, 2 N. Y. S. (2d) 743, and Levine v. Nolan Motors, Inc. 169 Misc. 1025, 8 N. Y. S. (2d) 311.

■ Defendant W. N. Eustermann testified that he "closed the deal with Mr. Seebold [plaintiff] on May 17th and delivered him the truck and told him that we would finance it for him. *I quoted him the price* * * * *and that the interest for 24 months was $142.16. That* [with the cost of insurance] *made up the total that went into the contract."* (Italics supplied.) In view of this candid admission, the court could hardly avoid finding that "said sum of $142.16 was added * * * as interest upon said deferred payments, and for no other purpose." Equally so is the finding "that said defendants have not claimed that their aforesaid computation of interest was a clerical error or unintentional." Since the interest charged was in excess of the legal rate, the conclusion reached "that said contract is usurious" necessarily followed. This language of the contract: "The undersigned Seller hereby sells, and the undersigned Purchaser hereby purchases on a *time price basis"* (italics supplied), cannot override the facts we have related. W. N. Eustermann's testimony and the court's findings have effectively disposed of the usury issue. "It is the agreement, and not necessarily its performance, which renders the debt usurious. We must look to the elements of the agreement, as and when made. * * * Intent to actually get excessive interest is the controlling element." Fred G. Clark Co. v. E. C. Warner Co. 188 Minn. 277, 289, 292, 247 N. W. 225, 229, 230.

■ That our usury law is harsh in its language and effect is obvious from a mere reading of the sections to which we have re-

ferred and quoted in the early part of this opinion. However, insofar as the act establishes a legislative policy, there is and can be "no judicial quarrel with legislative policy. The court does its duty when it carefully inquires whether there is a violation of the statute, and if there is gives to it the effect prescribed by the legislature." Trauernicht v. Kingston, 156 Minn. 442, 445, 195 N. W. 278, 279.

■ Nor is there any doubt that under the provisions of that law restoration on the part of the person who seeks relief from its effect need not be made, because, as was held in the Trauernicht case (156 Minn. 445, 195 N. W. 279) : "Our own rule," contrary to "the general rule over the country, * * * is that restoration need not be made." (Citing our prior cases.) "It results from our statute that a usurious loan is void and that it may be so declared and evidence of it and *securities pledged for its payment* canceled." (Italics supplied.)

■ Plaintiff's right of possession and his entire interest in the subject matter originated and necessarily rested upon the conditional sales contract. He had and possessed no other or greater interest. His insistence upon its destruction is founded upon its invalidity by reason of being usurious. By striking down that instrument, he seeks to obtain all the rights of ownership of the original owners. The problem is whether by so striking down the contract in its entirety plaintiff is thereby invested with defendants' ownership so that he may maintain replevin to recover that for which he bargained. Of course he is relieved of all obligations therein and thereby assumed by him. He is also entitled to a return of all *securities* pledged by him for the payment of the usurious purchase price. But what securities did he have with which to secure his purchase of the truck? Obviously, nothing except the truck. True, he has paid in all $211, and to that extent he may be entitled to reimbursement. This he does not want, at least not in this action. We, of course, are not called upon to determine his right to a refund of this money. The only question here is whether he has shown a right to immediate possession of the truck. To

prevail in such an action, he must show that he has " 'possessory title' to the thing sought—the right of immediate possession." 5 Dunnell, Dig. & Supp. § 8406, and cases in note 37.

■ Replevin is the appropriate means to recover possession of specific personal property—of definite things. The action is a possessory one and has in some of our cases been said to be akin and similar in its purpose and effect to actions in ejectment to recover possession of real estate. In both, it is a means of trying title to property. In both, the judgment, "in effect if not in form, determines the title" to the property involved. It is an appropriate form of action in which to determine which of two contending parties is the owner. 5 Dunnell, Dig. & Supp. § 8403, and cases cited in notes; cf. 2 Dunnell, Dig. § 2877, holding that in ejectment plaintiff must have the right of immediate possession.

If this were an action in ejectment and the facts were in other respects the same as here, and the original owner, prior to trial, had repossessed the premises sold, were in possession when the trial was held, and the plaintiff were seeking, as here, not only a cancellation of his obligation for the debt but also the fee title, which the contract provided he was to get upon meeting the conditions of the void contract, no court, so far as we are informed (and our research discloses none), and certainly not, so far as shown in plaintiff's briefs, would ever hold that ownership could thus be forfeited. The statute makes no such result mandatory, nor even permissible. Since its purpose is that of a shield to protect the weak and necessitous from oppression, but not a sword or rapier for offensive attack, we should so continue to interpret it. Plaintiff cannot take his claimed "pound of flesh" without spilling blood. Therefore, like Shylock, his defeat in this kind of action must inevitably follow.

■ Defendants cite Morgan M. & F. Co. v. Oliver, 101 Utah 492, 503, 124 P. (2d) 778, 783, in support of the conclusion finally reached by the trial court. In that case the finance company had sold an automobile to defendant under a conditional sales contract. Upon default in meeting the promised payments, the company

brought replevin to recover possession of the car, defendant being in possession under his contract. Defendant filed a cross-complaint, pleading usury under a statute which provided:

"Whenever it shall satisfactorily appear that any * * * contract, security or other evidence of debt has been taken or received in violation of the provisions of this title, the court shall declare the same to be void, and enjoin any prosecution thereon, and shall order the same to be surrendered and canceled, and any property, real or personal, embraced within the terms of such contracts, and all securities to be delivered up."

Relying upon the broad language of the act, defendant on his cross-appeal to the supreme court contended that the lower court erred in awarding possession to plaintiff, his claim being much the same as plaintiff's claim here. The court in disposing thereof held:

"* * * In the present instance, the property involved never belonged to respondent. It was in the beginning and always remained the property of appellant company. When the contract under which it was conditionally sold to respondent failed, the title still remained in the appellant company, and therefore it was entitled to its return. What effect a completed transfer of title, with a mortgage back, would have we need not here decide. We hold merely that under the provisions of the contract here involved the title to the property continued in the seller, and the buyer having never had title to the property is not now entitled to have title *restored* to him * * *."

The same result was reached in Dunlop v. Mercer (8 Cir.) 156 F. 545. In that case the conditional sales contract was unenforceable because the contracting parties were foreign corporations not authorized to do business in Minnesota, and the doors of our courts were closed against them for that reason. The title to certain property depended upon whether the vendee in the conditional sales contract could hold the property against the vendor's creditors, who were represented in the litigation by their trustee. The conclusion reached and the reasons therefor as stated in that opinion

are helpful in our disposition of this case. Said the court (156 F. 553):

"* * * If the agreement was void, then there was no contract that * * * [the vendee] should pay the agreed price for the goods, * * * or that the ownership or the title to them should ever pass" to the buyer," either with or without condition, and they remained in the vendor. * * * What the appellees really ask here is that because, as they contend, the agreement of conditional sale was illegal and void, this court of equity shall make for the parties a new agreement of absolute sale to which neither of them agreed, and which would have been equally void, and that it proceed to enforce this new agreement, so that the creditors of the vendee may appropriate to themselves property of the value of about $12,000 which belongs in equity to the creditors of the vendor. This petition does not appeal with compelling force to the conscience of a chancellor, and it must be denied."

In this case, it is equally obvious that neither plaintiff as buyer nor defendants as sellers intended or contemplated that the title to the truck was to pass unless or until there was payment first made. This is apparent from the language employed in the agreement and from the conduct of the parties thereafter. Thus we find that after the first monthly payment upon the purchase price was made plaintiff again failed to meet subsequent installments. On August 19 he issued a check to defendants payable to them for $115, intending it to be in payment of two installments. Defendants found that the bank upon which it was drawn would not honor it because plaintiff did not have adequate funds with which to meet it. In the language of Mr. Eustermann, that check, like the one for $50, "bounced back" for lack of funds.

Since Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; Halos v. Nachbar, 196 Minn. 387, 265 N. W. 26; and Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911, are said to support plaintiff's position, a brief review of what these cases hold seems desirable.

In the Lukens case the action was brought to recover the value of personal property taken under a chattel mortgage executed to secure a usurious note for money borrowed. The original note was for $585 and "confessedly usurious." When it fell due, defendant, the owner and holder thereof, told plaintiff that it would not be renewed. He referred plaintiff to one Kelly, from whom he thought plaintiff could get the needed funds with which to redeem it. He did so, Kelly pretending to loan plaintiff the needed funds, $637. He took as security for the new note the mortgage involved in the action. All that plaintiff received by virtue of the new loan was his old note. The court there said (37 Minn. 443, 35 N. W. 266): "Kelly was the agent or mere 'cat's paw' of defendant," the whole deal being a "mere device to evade the usury law," and that the new note was in fact "a mere renewal of the old one." In sustaining the verdict for plaintiff in that case the court said (37 Minn. 444, 35 N. W. 267):

"* * * we have no doubt he [plaintiff] could have defended an action on the note or maintain this action to recover the value of the property taken on the mortgage given to secure it * * *."

Obviously, that case on its facts is clearly distinguishable from the present one. There plaintiff's original ownership of and title to the property given as security for the loan was established. As such owner, he did not rely upon the usurious contract as a basis for his title but sought to procure a forfeiture of defendant's claim of right or title thereto because the latter's title had not been vested by the spurious mortgage.

Upon much the same factual foundation are the Halos and Midland cases. In both, there was a loan of money or the forbearance of a debt void and unenforceable because usurious. In neither case was there any holding that a void contract invested the borrower with title to property he had never theretofore owned. In neither case was there any claim that by a void contract the title to property could be taken from the original owner as a statutory forfeiture. That is what the present case presents—that and nothing

less. If we were to sustain plaintiff's claim, we should be going far beyond any of our prior cases and beyond the obvious purpose of our usury laws, which, as was well said by Mr. Justice Mitchell in the Lukens case (37 Minn. 443, 444, 35 N. W. 267), "are enacted to protect the weak and necessitous." We should not give aid and assistance to a claim permitting plaintiff to convert a legal shield into a weapon of offense, wholly destructive of what ordinarily is by trade and custom a time sales plan employed in automobile and truck sales. The average person does not generally place the purchaser of automobiles or trucks in the same category as the needy borrower. Such a purchaser is not considered a "victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller." General Motors Acceptance Corp. v. Weinrich, 218 Mo. App. 68, 78, 262 S. W. 425, 428.

There can be no quarrel with this statement by Mr. Justice Mitchell in the Lukens case (37 Minn. 444, 35 N. W. 267):

"* * * The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted."

If the usury law were to be construed otherwise, the borrower, being a party to the loan, might well be prevented thereby from showing the actual facts and thus be deprived of rights given him and clearly intended for his protection.

The construction of the act, as stated by Mr. Justice Mitchell, has been followed and applied in subsequent cases, and we do not construe it otherwise in this case. Therefore, our purpose is to give full effect to the law, but not in such fashion as to go beyond its general purpose. By *Id.* § 334.05 (§ 7040), the borrower is given the remedy of having "any * * * contract, security, or evidence of debt * * * taken or received in violation" thereof declared "to be void" and "any proceeding thereon" enjoined. Nowhere, we repeat, does the statute give him the right to confiscate another's property and thereby make it his own.

Enough has been said, we think, not only to justify the result reached by the trial court but to compel the same result here.

The judgment is affirmed.

LORING, CHIEF JUSTICE (dissenting).

I find myself in difficulties trying to reconcile the conclusion arrived at by the majority with well-established principles of the law, and I am disturbed by the practical effect of that conclusion. The vice in the reasoning of the majority lies in treating the usurious contract as wholly void as to both parties, whereas our holdings and the obvious purpose of the statute is to make it void as to the usurer only and to impose the penalties upon him alone. Section 334.01 (§ 7036) prohibits the taking or receiving of usurious interest, not the paying of it. The legislature did not need to prohibit the borrower from forcing usurious interest upon the lender. Section 334.02 (§ 7037) permits the person who has paid usurious interest to recover it, not the principal, one-half going to the common schools. True, § 334.03 declares the usurious contract void except in the hands of a *bona fide* purchaser, but permits the maker who has paid such *bona fide* purchaser to recover from the usurer what he may have paid in principal or interest to the *bona fide* purchaser. There seems to be no provision for recovery of the principal unless it has been paid to a *bona fide* purchaser. These statutes are aimed at the usurer, not at his victim. As said by this court, speaking through Mr. Justice Mitchell, in Lukens v. Hazlett, 37 Minn. 441, 443, 444, 35 N. W. 265, 267:

"* * * These laws are enacted to protect the weak and necessitous from oppression. The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted."

This interpretation of the statute has stood for over 56 years.

In Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 287, 296 N. W. 911, 915, this court, speaking through Mr. Justice Julius J. Olson, said:

"As we have here a usurious contract, void under the statute, it follows that the one guilty of usurious exaction must bear the legal consequence flowing from such violation. As such he must lose not only the interest on the money risked, but also the principal, including as well all security given to secure performance."

A conditional sales contract, of course, reserves the title in the seller. Sometimes it is referred to as the "legal title," at others as the "absolute title"; but that title is held only as security for the payment of the *balance* of the purchase price and does not survive payment of the *total* purchase price. In this state, such a sale does not normally effect a bailment. The equitable title or interest acquired by the buyer is assignable. It is a right to have the legal title transferred to him upon payment of the balance due the seller. Karalis v. Agnew, 111 Minn. 522, 525, 127 N. W. 440, 441. The contract, when accompanied by the transfer of possession to the buyer, gives the buyer a right of possession of which he cannot be deprived except in case of default. When there is no longer an obligation on the part of the buyer to pay, the legal title no longer survives in the seller.

Here we are dealing with a contract determined to be usurious and conceded by the majority to be so. As said in the majority opinion, the usury law is a harsh one. It was intended by the legislature to stop usury, and it is for that body to determine the policy of the state toward usury. It is not for us to legislate or to repeal legislation. If a usurious contract is wholly void as to both parties, as determined here by the majority, and if the seller or lender may then recover what he parted with, the purpose of the usury law is circumvented. If such a contract is void as to both parties, why cannot the lender recover the money that he has lent under the void arrangement in an action for money had and received? Yet the law heretofore has not tolerated the recovery by the usurer of either interest or principal.

If the contract now before us had not been usurious and there had been no default on the part of the purchaser, the seller could not maintain replevin for the automobile. If the usurious contract

was not void as to the purchaser, it served to pass the possession of the property to him. In this replevin action, where plaintiff is seeking possession of the car, he could introduce in evidence the usurious contract to show his right to possession, since as to him it is not void. Defendants, on the other hand, would not be in a position to claim possession for default, the only ground on which they might be entitled to it, because as to them the contract is void and plaintiff owes them nothing. There is no default. How, then, can the seller maintain replevin or how can he lawfully exercise a right of repossession? Had not defendants here recaptured the automobile by direct action and were they in court as plaintiffs in a replevin action, how would they prove a right to possession, except as in Halos v. Nachbar, 196 Minn. 387, 265 N. W. 26, *infra,* by endeavoring to show a breach of the void contract? Holding, as the majority does, that the contract is wholly void as to the buyer as well as to the seller permits the usurious seller to recapture the property at any time, and we thereby encourage the making of usurious contracts by the sellers, because they will run no risk whatever of losing the property, but may recapture it at any time. In many instances the purchaser will pay the usurious interest as well as the purchase price. By the majority decision, that is what the purchaser must do hereafter to protect his investment if he has paid anything on the contract, if, indeed, that will be any protection.

It strikes me that when the statute in regard to usury says that such contracts shall be void it merely means, as this court said in Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265, *supra,* that they shall be void as to the lender or, in this case, as to the seller; that the contract which we have under consideration here serves to pass possession to the purchaser; and that that possession may not be disturbed.

In Halos v. Nachbar, 196 Minn. 387, 265 N. W. 26, this court had before it a transaction similar to the one at bar. There the defendant Nachbar made a usurious loan to the plaintiff, covering it by a conditional sales contract in which the Torrance Motor

Company appeared as the seller. It then assigned the contract to Nachbar. By that arrangement, Nachbar placed himself in the same position as defendants here. Upon default, Nachbar got possession of the automobile which was the subject of the contract. Halos sought recovery by replevin, and this court held that, since the only claim that Nachbar could assert, either of title or right of possession, came through the contract executed to evidence the transaction, and that contract was tainted with usury, Halos could recover possession of the automobile. That there was a loan instead of a usurious agreement to pay interest on the purchase price does not change the application of the law where, as here, usury vitiates the contract as to the usurer. The contract here under consideration fixed the price and then provided interest on that price at a usurious rate. It differs entirely from a case where there is a cash price and a higher price on time.

In the case at bar, the only right to possession which defendants had was under the usurious contract, void as to them but not as to plaintiff.

I am not persuaded to follow the majority opinion in the case of Morgan M. & F. Co. v. Oliver, 101 Utah 492, 503, 124 P. (2d) 778, 783, for the reason that the Utah statute, as interpreted by the Utah court, provides in substance:

"* * * that it will place the parties as they were before the contract—in so far as property given as security for the repayment of the 'loan of forbearance' is concerned."

Nor is the case of Dunlop v. Mercer (8 Cir.) 156 F. 545, controlling. There the federal court held that the federal courts were not foreclosed from entertaining suits by unqualified foreign corporations in controversies of which the statute and acts of congress give the federal courts jurisdiction. Also, in that case, the so-called conditional sales contract was but a bailment of goods for sale by the bailee, and consequently the rule which we are considering here does not apply. At any rate, the court there held that the Minnesota statute in regard to foreign corporations did not make the contract under consideration void.

586

My impression is that the trial court was correct in its first holding and that the judgment should be reversed.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.

[1]Reported in 13 N. W. (2d) 754.