MATHIS et al v. HOLLAND FURNACE CO.

No. 6849.   Decided February 15, 1946.   (166 P. 2d 518.)

See 66 C. J., Usury, sec. 76; 27 R. C. L., 232.

*D. H. Oliver*, of Salt Lake City, for appellants.

*Roberts & Roberts*, of Salt Lake City, for respondent.

TURNER, Justice.

Plaintiffs sued the defendant in three causes of action growing out of a transaction involving the purchase and installation of a Holland Furnace, a stoker and other heating equipment in their home in Salt Lake City. The case went to trial before a jury on the second and third causes resulting in a directed verdict in favor of defendant of no cause of action. The first cause of action, sounded in usury, was afterwards amended and when issue was joined the trial court, sitting without a jury, rendered judgment thereon also in favor of the defendant of no cause of action.

Plaintiffs appeal and set out a number of specific assignments of error, but the propositions of law submitted on the appeal may be stated briefly as follows: (1) That the note and contract executed by plaintiffs for the purchase of the heating equipment were usurious and in violation of Title 44, U. C. A. 1943; (2) that the furnace installed in plaintiffs' home by defendant is not the furnace contracted for and therefore they are not bound to accept and pay for it; and (3) that by reason of proposition (2) defendant has committed a trespass upon plaintiffs' premises and is liable therefor in damages.

(1) On June 15, 1942, plaintiffs executed and entered into a written conditional sales contract with defendant for the installation in plaintiffs' home of a heating system, including a furnace, a stoker and controls, one new warm air and one new cold air run. The cash price is stated in the contract as $555. A cash down payment was made of

$200. To the balance of $355 was added $18.68. This is termed in the contract a finance charge. However, under the provisions of our statute this is not a finance charge, but interest computed upon the principal. Principal and interest were to be paid in 12 monthly installments of $31.14 each, commencing on the 15th day of July, 1942. The sum of $18.68 amounts to approximately $9\frac{1}{4}$ per cent interest on the unpaid balance of the contract. While our statute allows a special finance charge, which can be used but once on a transaction, it is a special charge and limited to special purposes, and it cannot be charged merely as a means of abstracting interest additional to the amount of interest allowed by the law. That this charge cannot be treated as a finance charge is evidence by the fact that it exceeds the amount allowed by the statute, and the further fact that the sum of $18.68 is added to the unpaid principal and the contract and note provide for interest on both after maturity. The statute prohibits the taking of interest on a finance charge. Sec. 44-0-2, U. C. A. 1943.

The contract also provided that if the buyers defaulted in any payment or failed to comply with any of its conditions the seller might, at its option, declare the entire sum remaining unpaid to be immediately due and payable and sue therefor, thereby vesting absolute title in the buyers, or take possession of the heating plant and accessories and hold the same as the seller's property absolutely and retain all payments made for the reasonable rental thereof. The contract then provides that:

"Interest at the rate of six per cent per annum will be charged on all money not paid when due."

On the same day the contract was executed, a promissory note was also executed by plaintiffs in favor of defendant for the total principal sum of $373.68, the unpaid balance shown to be due under the contract, payable in 12 successive monthly installments of $31.14 each commencing on July 15, 1942, until fully paid

"with interest on principal, after maturing of entire balance as herein provided, *at the highest lawful contract rate,* and 15% of the principal and interest of this note, or at the option of the holder a reasonable sum, as attorney's fees, if placed in the hands of an attorney for collection after maturity."

The note further provided that upon nonpayment of any installment at its maturity, all remaining installments should become due and payable forthwith and that:

"Authorized F. H. A. 'late charges' (5c per $1, maximum $5) are payable on any installment more than 15 days in arrears."

Shortly after its execution the note was transferred by defendant to the Commercial Credit Corporation and after the failure and refusal of plaintiffs to make the July 15th or any other payment under the note, the Commercial Credit Corporation on September 19, 1942, assigned the note to the United States, represented by the Federal Housing Administration. On June 13, 1944, the Federal Housing Administration in the name of the United States having previously instituted suit in the United States District Court for the District of Utah, appeared for trial of the said cause and after the submission of testimony and other evidence, judgment was entered against these plaintiffs on the note for the principal sum of $361.16, together with interest at the rate of 6% per annum from October 7, 1942, amounting to $39.71, and for costs in the sum of $30.80, and this judgment, totaling $431.67, was paid in full by these plaintiffs on the same day judgment was entered. No attorney's fees were claimed and none were allowed. These matters are related to give a complete picture of this transaction. The judgment awarded in the Federal Court was not usurious.

In their brief, appellants argue and attempt to arrive at a computation showing that the note and contract were usurious in that they provided for a maximum of 25¼% interest which, when increased by 15% of the principal and interest due, or a reasonable attorney's fee, would amount to 40¼% interest, and they rely on the case, among

others, of *Parks* v. *Lubbock,* 92 Tex. 635, 51 S. W. 322. Our usury statute is Sec. 44-0-2, U. C. A. 1943, from which we quote:

"The parties to any contract may agree in writing for the payment of interest for the loan or forbearance of any money, goods or things in action, not to exceed, except as otherwise provided by law, ten per cent per annum * * *.

"No contract for the purchase of any goods, wares or merchandise or loan or forbearance of money, shall contain any provision providing for a handling or service charge on any said contract, or any commercial charge on said contract, or any charge whatsoever, which when taken together with the interest charged on said contract for the sale of goods, wares or merchandise, or for the loan or forbearance of money, exceeds ten per cent per annum of the unpaid principal sum of said loan or contract except: (a) A contract may specifically provide for a service charge, which charge shall not exceed four per cent per annum of the unpaid balance of the said principal sum, such service charge to be applied but once on any transaction and shall not be again applied in case of refunding or renewal of contract between the parties concerned with the original transaction nor shall such service charge be subject to any additional service charge, interest charge or penalty; (b) a reasonable attorney's fee in case of collection by an attorney; and (c) such exceptions as are otherwise provided by law.

"Interest accruing on loans, contracts, forbearance of money, goods, or things in action, under sections 44-0-1 and 44-0-2, Revised Statutes of Utah, 1933, when paid in advance or otherwise shall not exceed the rate of ten per cent per annum."

Prior to 1935 this statute relative to usury contained but the first paragraph. The legislature in 1935 (Laws of Utah 1935, Ch. 42) amended the law by decreasing the legal rate of interest from 12 to 10 per cent per annum and adding the last two paragraphs. It is to be noted that no handling charge may be added to a contract for the purchase of goods, etc., or a loan or forbearance of money which, when taken together with the interest charged, exceeds 10% per annum of the unpaid principal; but the statute makes a specific exception permitting a service charge not to exceed 4% per annum of the unpaid balance of the principal sum to be paid to be applied but once to any transaction. The amendment also provides for the addition of a reasonable attorney's fee in case of collection by an attorney.

In affirming a judgment construing a conditional sales contract to be usurious under our statute quoted above in *Morgan Motor & Finance Co.* v. *Oliver*, 101 Utah 492, 124 P. 2d 778, 782, we said:

"Of course, it does not prohibit the making of conditional sales contracts. Nor under its provisions is it impossible for a merchant to sell goods on time at a higher price than he might take if sold for cash. But what it does prohibit is the transaction, such as here involved, in which the seller quotes a price to the prospective customer —without regard to cash or time—and then when the transaction is finally completed as a time purchase one charged him more than the law permits for the 'forbearance' of the money due for the goods sold. See on this subject *Sayler* v. *Brady*, 63 N. D. 471, 248 N. W. 673, where the statute involved is somewhat similar to our own."

In 143 A. L. R. 259 we read:

"As said in 27 R. C. L. 211, Usury, Sec. 12, to frustrate attempted evasions of the usury laws the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered in testing a transaction for the presence of usury.

"The American Law Institute, Restatement, Contracts, Vol. 2, Sec. 529, states the general principle: 'Where the intent of a party to a bargain is to make a loan of money or an extension of the maturity of a pecuniary debt for a greater profit than is allowed by law, the agreement is illegal though the transaction is put in whole or in part in the form of a sale, a contract to sell or other contracts.'"

In *Ewalt* v. *Mortgage Securities Inc., of Santa Barbara*, 129 Cal. App. 559, 19 P. 2d 60, at 62, the court said:

"The terms of the entire contract may be considered in determining whether it was an illegal effort to exact usurious interest. Since an illegal intent to exact prohibited profit for the loan of money is essential to establish usury, a court may examine into all the circumstances of the transaction to ascertain the intent with which it was accomplished."

It is contended that this statute does not include regulations relative to the detention of money. We hold that it

does. Except as otherwise allowed by statute, and with the exception set forth in this section providing for a service charge, the legislature stipulated that parties to any contract may agree in writing for the payment of interest for the loan or forbearance of money, goods or things in action not to exceed ten per centum per annum.

Does the term "forbearance" include "detention"? We say it does. In *Upton et ux. v. Gould*, 64 Cal. App. 2d 814, 149 P. 2d 731, it was held, from the syllabus,

" 'Forbearance' within meaning of usury law is act by which creditor waits for payment of debt due him by debtor after it becomes due."

The further fact that the statute provides for attorney's fees, collectible after default of the debtor, is evidence that the legislature considered charges and penalties which could be had in addition to lawful interest.

An examination of the contract and note shows clearly that they both evidence the same obligation. They provide for the same face amount, to wit: $373.68, to be paid in monthly installments of $31.14. They however differ as to provisions for interest after default. If the obligation were paid according to the provisions of the contract and note, there would be nothing required of the debtor other than the regular installment payments.

The only way that the question of usury can be brought into this transaction is by default of the debtor. The contract provides for acceleration in case of default, as follows:

"If Buyer defaults in any payment or fails to comply with any of the conditions hereof, the Seller may at its option, either (1) declare the entire sum remaining unpaid hereunder to be immediately due and payable, and sue therefor, thereby vesting the absolute title in Buyer; or (2) take possession of said heating plant, accessories, and piping and hold the same absolutely as Seller's property, and retain all payments made hereunder as and for the reasonable rental thereof."

Interest at the rate of 6 per cent per annum "will be charged on all money not paid when due." From the terms of the contract it is clear that the only provision for interest,

other than that added to the note, is for 6 per cent on money not paid when due. The option to sue does not provide for any interest charges that are usurious.

It is strange but true that the note provides terms contrary to the contract. The note provides for interest, after maturity of the entire balance, at the highest lawful contract rate, and for 15% of the principal and interest of the note, or at the option of the holder, a reasonable sum, as attorney's fees. It is apparent that this provision does not violate the usury statute, for it provides for the highest lawful rate after maturity of the entire obligation. The note does not stop with this provision, but also has an acceleration clause, to wit:

"On nonpayment of any installment at its maturity, all remaining installments *shall become due and payable forthwith.* Authorized F. H. A. 'late charges' (5c per $1, maximum $5) are payable on any installment more than 15 days in arrears."

It will be observed that only in case of default at an early date and by application of this last provision of the note could there be collected a sum as interest greater than provided by the statute. A contract, to be usurious, must be so when made and it is essential that a corrupt or unlawful intent to violate the usury law, at least on the part of the lender, be proved to render a contract usurious. See *Cobb* v. *Hartenstein*, 47 Utah 174, 152 P. 424. While the courts of Texas and Florida have held that the application of an acceleration clause similar to the one in the note herein considered is usurious, the great weight of authority is to the contrary. We call attention to the annotations found in 84 A. L. R. 1283 and the cases cited thereunder, and quote the note at p. 1283:

"By the great weight of authority, it is held that the inclusion, in a contract to repay money, of a provision that, on default in the payment of the interest, or an installment of the principal, the entire indebtedness, including interest for the whole term or interest to the date of default, shall become due, does not constitute usury though the amount of such interest will exceed the legal rate. The excess interest, however, is penal, and can be neither collected nor retained."

We hold that this law applies to the note which we are now concerned. It is not on its face usurious. It could be usurious only upon default at an early date and by the application of the F. H. A. charges. For example, if the debtor failed to make payment, as in the present case, and at the end of ninety days the holder declared the entire obligation due and immediately payable and collected the F. H. A. charges, then the money received as interest for the loan or forbearance would be far greater than allowed under the statute. Only by an attempt to collect charges under the contract which would constitute usury could we find the required intent to justify a finding of usury.

If, as in the case of *Seebold* v. *Eustermann, et al.,* 216 Minn. 566, 13 N. W. 2d 739, 152 A. L. R. 585, it should appear the seller intended to collect a sum as interest greater than allowed by law, because of optional provisions, we would hold the contract usurious. The opinion in *Seebold* v. *Eustermann,* supra, is worthy of study. It states clearly the essentials of usury and the tests to be applied to determine usury.

Under the facts and circumstances presented, we find against the appellants on their contention that the contract and note are usurious.

(2) In connection with this second and third propositions, stated above, plaintiffs alleged that they contracted and paid for a No. 250 furnace and defendant installed a No. 2500 furnace against their will and consent; that early in July, 1942, they notified defendant that the furnace they had contracted for had not been installed and that they refused to pay the balance unless and until the furnace actually contracted for was installed as provided by the contract. Defendant admits by its answer that a No. 2500 furnace was installed but alleges, and the proof amply establishes, that the two furnaces, No. 250 and No. 2500, were structurally the same. Parts were interchangeable, except for minor castings, and the price list was the same on both. An exhibit in evidence shows that plaintiffs executed a completion certificate certifying

"that all articles and materials have been furnished and installed and the work satisfactorily completed in accordance"

with their application for a loan.

The testimony is in conflict but it is unnecessary to recite it in detail. We have examined the record carefully and are of the opinion the trial court committed no error in directing a verdict of no cause of action in favor of defendant on both the second and third causes. The record amply establishes the fact that plaintiffs did not contract to buy a specific, designated and selected furnace. They bought by description and hence cannot bring themselves with the cases cited by them relating to the purchase of definite, specific articles.

The trial court's decision was based on the conclusion that there was a substantial compliance with the terms of the contract by defendant. The record definitely bears out the fact that the only difference between the two furnaces, No. 250 and the No. 2500 which was installed, is the number on the door and the change in the method of installing the baffle-iron in back of the fire-box; that in all other respects the two models were the same, the same fire-box capacity, the same heating capacity and efficiency, the same material and weight, with the parts interchangeable, and the same value.

The case of *Holt* v. *Sims,* 94 Minn. 157, 102 N. W. 386, 387, cited by respondent, is directly in point and persuasive under the circumstances of the instant case. We quote therefrom as follows:

"The only remaining question we deem it necessary to pass upon is that in furnishing the heating apparatus for the dwelling house a No. 5 St. Paul boiler was furnished, instead of a No. 3, as specified in the terms of the contract. It appears that the plaintiffs were unable to obtain a No. 3 boiler, and the No. 5 St. Paul boiler furnished a better and greater heating capacity than the one provided for, and the court held this was a substantial compliance with the contract. It seems almost finical for the defendants to complain that their house was not well heated because the plaintiffs did not provide a suitable furnace upon the ground that the one furnished was really better in this respect than that which was named in the contract, and we are very clear that

the ruling of the trial court that there was a substantial compliance with the contract must be sustained. This seems to us to be too obvious to admit of controversy, and fully sustained by the authorities. *O'Dea* v. *City of Winona,* 41 Minn. 424, 43 N. W. 97; *Leeds* v. *Little,* 42 Minn. 414, 44 N. W. 309; *Madden* v. *Oestrich,* 46 Minn. 538, 49 N. W. 301; *Anderson* v. *Pringle,* 79 Minn. 433, 82 N. W. 682."

See also *Fletcher* v. *Interstate Chemical Co.,* 94 N. J. L. 332, 110 A. 709, affirmed on review 95 N. J. L. 543, 112 A. 887, 17 A. L. R. 92; *Kernan* v. *Crook, Horner & Co.,* 100 Md. 210, 59 A. 753; *Rockwood Sprinkler Co.* v. *Johnson,* 165 La. 291, 115 So. 491.

(3) It follows from the foregoing that there was no trespass committed by defendant upon plaintiffs' premises, and the third proposition must therefore also fail.

The judgment of the trial court is affirmed, with costs to respondent.

LARSON, C. J., and McDONOUGH, WADE, and WOLFE, JJ., concur.